TECH HILLS II ASSOCIATES, Plaintiff–Appellant, Cross–Appellee,

v.

PHOENIX HOME LIFE MUTUAL INSURANCE COMPANY, Defendant–Appellee, Cross–Appellant.

Nos. 92–1048, 92–1068.

United States Court of Appeals,
Sixth Circuit.

Argued July 1, 1993.

Decided Aug. 17, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1993.

Norman C. Ankers (argued and briefed), Lee W. Brooks (briefed), Honigman, Miller,

Schwartz & Cohn, Detroit, MI, for plaintiff-appellant cross-appellee.

Mark W. McInerney, James E. Brenner (argued and briefed), Robert R. Maxwell, Mary C. Dirkes, Houghton, Potter, Sweeney & Brenner, Detroit, MI, for defendant-appellee cross-appellant.

Before: KENNEDY and MARTIN, Circuit Judges; and WISEMAN, District Judge.*

KENNEDY, Circuit Judge.

This diversity action involves the failed contract negotiations between plaintiff Tech Hills II Associates ("Tech Hills"), a Michigan partnership created to own and develop real estate, and defendant Phoenix Home Life Mutual Insurance Company ("Phoenix"), a potential lender for development. Tech Hills appeals and Phoenix cross-appeals from the judgment dismissing claims and counterclaims for breach of contract and misrepresentation, and awarding plaintiff $252,000, plus interest, on its claims seeking the return of a loan commitment fee. Phoenix has moved to dismiss Tech Hills' notice of appeal after payment and satisfaction of the judgment of the District Court. Tech Hills moved for summary reversal based on lack of jurisdiction in the District Court. For the reasons that follow, we deny Tech Hills' motion, grant Phoenix's motion and affirm the judgment of the District Court.

## I. Background

Representatives of Tech Hills and Phoenix engaged in negotiations surrounding the financing of the development of approximately fifteen acres of land, owned by Tech Hills, in Farmington Hills, Michigan. The contemplated deal involved a mortgage loan and a sale/leaseback agreement. C. Michael Kojaian, a partner of Tech Hills, and Richard DeVore, a mortgage banker acting on behalf of Phoenix, were the initial negotiators of the transaction. The issue of the personal liability of Kojaian and his fellow partners arose throughout the negotiations. Kojaian under-

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

stood and agreed that the partners would be personally liable in certain limited circumstances.

On December 28, 1988, a mortgage loan commitment and a sale/leaseback commitment were executed by the parties. Phoenix agreed to loan Tech Hills $10,400,000.00, at an interest rate of 9.5%. Tech Hills paid $252,000 as a commitment fee for the loan. According to the terms of the loan commitment, the fee would be returned "at the closing if the loan closes in accordance with the terms of the commitment, otherwise the standby fee [would] be deemed to have been earned by [Phoenix] for the issuance and holding open of this commitment." The loan commitment does not refer to any personal warranties on behalf of Tech Hills. In contrast, the sale/leaseback commitment referred to year-long warranties and representations that would appear in the sale/leaseback agreement. At no time prior to December 28, 1988, when the commitments were signed, did the parties discuss any personal liability enuring to the partners beyond the already agreed upon limited liability.

In March, 1989, Phoenix presented Tech Hills with proposed closing documents. The proposed purchase and sale agreement contained twenty one new warranties and representations and provided for personal liability if any of them were breached. A representative of Tech Hills informed Phoenix that the additional warranties were unacceptable.

On May 2, 1989, the parties met in Hartford, Connecticut to iron out their disagreements with an eye toward closing the deal. Tech Hills brought three issues to the table, none of which were resolved by the end of the meeting. The primary point of contention between the parties was the additional warranties included in section 9 of the purchase and sale agreement. Phoenix agreed to amend and delete several of the warranties, but Tech Hills was unwilling to compromise. Phoenix left the meeting feeling that any unresolved problems could be worked out with further negotiation. Tech Hills was not so optimistic; it did not want to expose its partners to additional personal liability.

## II. Procedural History

### A. District Court

On May 17, 1989, Tech Hills filed a three-count complaint against Phoenix alleging breach of contract (Count I); fraud (Count II); and misrepresentation (Count III). Phoenix removed the action, filed in Oakland County Circuit Court, to the United States District Court for the Eastern District of Michigan. Phoenix filed a counterclaim against Tech Hills claiming breach of contract (Count I); negligence (Count II); gross negligence/reckless misconduct (Count III); fraud and misrepresentation (Count IV); and seeking a declaratory judgment that Phoenix could keep the $252,000 commitment fee paid by Tech Hills (Count V). Following a bench trial, the court found that there had been no "meeting of the minds" between the parties on material matters within the agreement, namely the grounds for personal liability enumerated in the purchase and sale agreement, therefore, no contract was ever formed. The court also found that both parties had bargained in good faith throughout the negotiations and "were honestly talking about two different 'deals.'" Consequently, the court dismissed the parties' claims and counterclaims for breach of contract, fraud and misrepresentation.

Having concluded that the parties never agreed on material terms of the loan arrangement, the court believed Tech Hills was entitled to the return of the commitment fee, plus interest. Tech Hills had prayed for the return of the commitment fee as part of its damages for breach of contract. The court could not award the sum to plaintiff under a breach of contract theory since the court found that no contract ever existed. The court indicated that it would allow Tech Hills to amend its complaint to seek return of the fee under an appropriate theory of recovery. Tech Hills filed an amended complaint seeking return of the $252,000 under five alternative theories.

On September 23, 1991, the court issued an order finding that Tech Hills was entitled to the fee under a theory of unjust enrichment or failure of consideration. On the same day, the court issued its judgment incorporating its orders of November 28, 1990, and Sep-

tember 23, 1991. The judgment, entered October 1, 1991, ordered the return of the fee plus interest and costs to Tech Hills; dismissed all other claims made by Tech Hills; and dismissed all claims asserted by Phoenix.

On October 10, 1991, Phoenix filed a motion to alter or amend the judgment. It sought a ruling that any prejudgment interest on the $252,000 would be calculated from the filing date of plaintiff's amended complaint, instead of the filing date of the original complaint. On October 29, 1991, Tech Hills executed a partial satisfaction of judgment in exchange for payment of $253,000.30, the $252,000 fee, plus $1,000.30 post-judgment interest. On December 3, 1991, the court denied defendant's motion to amend the judgment. In lieu of appealing the court's decision, Phoenix decided to pay the remaining pre-judgment interest, from the date of the original complaint, in exchange for a full satisfaction of judgment from Tech Hills. On December 17, 1991, Tech Hills executed the following unconditional satisfaction of judgment:

WHEREAS, judgment was rendered in this case in favor of the plaintiff, Tech Hills II Associates, and against the defendant, Phoenix Mutual Life Insurance Company, and was entered in the Court on September 23, 1991, in the amount of $252,000 with interest and costs to be taxed;

WHEREAS, defendant has paid to plaintiff the full amount of said judgment;

NOW, THEREFORE, Tech Hills II Associates, the owner of said judgment, acknowledges full payment and satisfaction of said judgment and releases and discharges the same.

Tech Hills subsequently filed a notice of appeal from the same judgment that it acknowledged was fully satisfied. Phoenix then cross-appealed.

## B.  Court of Appeals

Phoenix filed a motion to dismiss Tech Hills' notice of appeal on the grounds that plaintiff has waived its right to appeal by accepting the benefits of the judgment. Alternatively, Phoenix requests that the money paid to Tech Hills be returned. Tech Hills

filed a motion for summary reversal of the judgment on the ground that this action was improperly removed from state court. Consequently, plaintiff asserts that the District Court lacked jurisdiction and its judgment must be summarily reversed and the case remanded to state court. On June 18, 1992, this Court granted defendant's motion to dismiss and denied plaintiff's motion for summary reversal as moot. 966 F.2d 1454. Tech Hills petitioned the Court for rehearing. On July 23, 1992, a panel of this Court vacated the order of June 18, 1992 and referred both motions to the panel assigned to hear the merits of the appeals.

## III.  Removal Jurisdiction

## A.  Commencement of Removal Period

■ Plaintiff argues that the removal petition was procedurally defective and, consequently, that the District Court erred in denying its motion to remand. First, plaintiff asserts that the removal notice was untimely because it was not filed within thirty days of the receipt of the complaint by the defendant. The notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C.A. § 1446(b) (West Supp.1993). In this case, the complaint was sent by Federal Express, and received by a security guard in defendant's closed office building on Saturday, May 20, 1989. Bradford Buck, defendant's in-house counsel, received the complaint the following Monday. The District Court concluded that the thirty-day time period commenced on Monday, May 22nd, not on Saturday, May 20th. The petition for removal was filed within thirty days of May 22nd.

The parties concede that formal service of process did not occur until Monday, May 22nd. Plaintiff argues that under section 1446(b), formal service of process is not required to commence the thirty-day time period in which the notice of removal must be filed. The issue raised is the meaning of section 1446(b)'s requirement that a notice of removal be filed within thirty days after "re-

ceipt by defendant ... *through service or otherwise*" of a complaint. Federal courts have split in their interpretation of this requirement.

In one line of cases, courts have followed the position first articulated in *Love v. State Farm Mutual Auto Ins. Co.*, 542 F.Supp. 65 (N.D.Ga.1982), that the statutory time period commences only upon proper service of process. *See Marion Corp. v. Lloyds Bank, PLC*, 738 F.Supp. 1377 (S.D.Ala.1990); *Goodyear Tire & Rubber Co. v. Fuji Photo Film Co.*, 645 F.Supp. 37 (S.D.Fla.1986); *Hunter v. American Express Travel Related Servs.*, 643 F.Supp. 168 (S.D.Miss.1986); *Thomason v. Republic Ins. Co.*, 630 F.Supp. 331 (E.D.Cal.1986). This position rests on the legislative history of section 1446(b). The *Love* court explained:

> Prior to 1948, a removal petition was in essence a state court responsive pleading; it was filed in that court within the time permitted to answer a complaint as established by the state's rules of civil practice. In 1948, in an attempt to make the removal procedure more uniform, Congress revised section 1446(b) to provide that the removal petition be filed in federal court "within twenty days after commencement of the action or service of process, whichever is later." 62 Stat. 939 (1948). Under this formulation, of course, the removal period could not begin until service of process had been obtained. A problem arose, however, in those states such as New York which permitted a plaintiff to commence a suit without serving or filing a complaint, merely by serving the defendant with a summons. Under the 1948 version of section 1446(b), in such cases the removal period could expire before a defendant received a copy of the complaint, thus depriving him of an opportunity to remove the action. It was in response to this problem that Congress revised section 1446(b) to permit re-

moval "within twenty [now thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." *See* H.R.Rep. No. 352, 81st Cong., 1st Sess., *reprinted in* (1949) U.S.Code Cong.Serv. 1254, 1268. Thus, the "through service or otherwise" language was intended to expand the removal period in states following the New York Rule. It was not intended to diminish the right to removal, by permitting a plaintiff to circumvent the already existing requirement of personal service through informal service.[1]

542 F.Supp. at 67 (footnote omitted and citation omitted).

In the opposing line of cases, the courts have adopted the "receipt rule," which views the actual receipt by a defendant of a complaint as sufficient to commence the thirty-day period, irrespective of the technicalities of state service of process requirements. *See Kerr v. Holland America–Line Westours, Inc.*, 794 F.Supp. 207 (E.D.Mich.1992); *Trepel v. Kohn, Milstein, Cohen & Hausfeld*, 789 F.Supp. 881 (E.D.Mich.1992); *Pillin's Place, Inc. v. Bank One*, 771 F.Supp. 205 (N.D.Ohio 1991); *Dawson v. Orkin Exterminating Co.*, 736 F.Supp. 1049 (D.Colo.1990); *Conticommodity Servs., Inc. v. Perl*, 663 F.Supp. 27, 30 (N.D.Ill.1987) (collecting cases adopting the receipt rule). These cases take a plain meaning approach to interpreting the language of the statute and reject the legislative history analysis of *Love* and its progeny.

Earlier cases adopting the receipt rule based their position on a different interpretation of the legislative history of section 1446(b): The purpose of the 1949 amendment was to promote national uniformity in the triggering of the removal period by relying on receipt of the initial pleading instead of formal service of process, which varied from state to state. *See Tyler v. Prudential Ins. Co.*, 524 F.Supp. 1211, 1213 (W.D.Pa.1981);

---

1. Similarly, the *Thomason* court believed that the 1949 amendment to section 1446(b)

> was intended to expand the removal period in states which allowed plaintiff to commence a suit without filing a complaint. Plaintiff is still required to properly serve defendant. The "or otherwise" language pertains only to those states where plaintiff can commence a suit

> without filing or serving [an] initial pleading until sometime later. For those states, the removal period begins whenever defendant receives a copy of the initial pleading. The "or otherwise" does not mean that receipt of the initial pleading without proper service will trigger the removal period.

630 F.Supp. at 333–34 (citations omitted).

*French v. Banco Nacional De Cuba,* 192 F.Supp. 579 (S.D.N.Y.1961); 14A Wright, Miller & Cooper, *Federal Practice & Procedure,* § 3732, at 513. They concluded that the ambiguous legislative history does not compel the conclusion that service of process is necessary to commence the removal period.

Beginning with *Conticommodity Services,* courts relied on a second and sounder rationale[2] for adopting the receipt rule: overriding principles of statutory interpretation.

The flaw in [the *Love*] line of reasoning is that it ignores the clear and unambiguous language of the statute. As the Supreme Court of the United States has frequently noted, "[i]nterpretation of a statute must begin with the statute's language." *Mallard v. United States District Court for the Southern District of Iowa,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989) (citations omitted). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Although the legislative history relied upon by *Love* and its progeny clearly indicates one motivating factor in the decision to amend § 1446(b), it is silent on the issue of whether formal service is necessary to trigger the running of the removal period. *Pillin's Place,* 771 F.Supp. at 207.

The later cases adopting the receipt rule give three reasons for their position: (1) the rule arises from a straightforward interpretation of the clear statutory language; (2) the

legislative history does not lead to the conclusion that the rule is "demonstrably at odds" with Congress' intent in amending section 1446(b); and (3) the rule is consistent with the longstanding principle that the removal statutes are to be construed strictly, narrowly and against removal. *See Kerr,* 794 F.Supp. at 212-13; *Trepel,* 789 F.Supp. at 883; *Pillin's Place,* 771 F.Supp. at 207; *Conticommodity Services,* 663 F.Supp. at 30-31.

◼ We are persuaded by the reasoning of *Kerr, Trepel, Pillin's Place,* and *Conticommodity Services* and adopt the receipt rule. We hold that the removal period is commenced when the defendant has in fact received a copy of the initial pleading that sets forth the removable claim. The removability of the action must be readily ascertainable from the face of the pleading.

As a general rule, a complaint is considered received by a corporation when it is received by an agent authorized to accept service of process. *See Pochiro v. Prudential Ins. Co.,* 827 F.2d 1246, 1279 (9th Cir. 1987); 14A Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3732, at 513-15. The security guard at defendant's building who received the complaint was not so authorized. We hold that delivery at defendant's place of business on a Saturday, when the offices are closed, to a security guard, who is not authorized to receive service on behalf of the corporation, is not receipt under the removal statute. The removal period was commenced on Monday when the complaint was delivered to and thus, received by an authorized representative of Phoenix. Thus, the petition was timely filed.

## B. Defective Allegations in the Petition for Removal

◼ Next, plaintiff contends that the removal petition was deficient because it did

---

2. The *Conticommodity Services* court discussed the weakness of the earlier approach:

> While the language of the statute does suggest a single national standard based upon notice, the congressional reports accompanying the 1949 amendment do not say that state service rules are irrelevant in determining commencement of the removal period. See 1949 U.S.Code Cong.Serv. at 1253-54 (S.Rep. No.

303), 1268 (H.R.Rep. No. 352); cf. *Potter v. McCauley,* 186 F.Supp. 146, 149 (D.C.Md. 1960) (discussing operation of statute in four situations under *Love* approach). Rather, they simply express congressional desire to correct the problems that arose under the 1948 removal statute and repeat, more or less, the provision of the statute.

*Conticommodity Services,* 663 F.Supp. at 30.

not allege the citizenship of the individual partners. The petition alleged that plaintiff was a partnership that does business in Michigan and that defendant was a Connecticut corporation, with its principal place of business in Connecticut, and was not a citizen of Michigan. The District Court granted defendant leave to amend the petition to include allegations of the partners' citizenship.

This Court recently allowed a defendant to cure defective allegations of diversity jurisdiction in its removal petition [3] where such jurisdiction did in fact exist after the time for removal had expired. *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir.1993). *See also Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir.1984); *Roberts v. Panhandle Eastern Pipeline Co.*, 737 F.Supp. 545, 547–48 (W.D.Mo.1990); *Stanley Electric Contractors, Inc. v. Darin & Armstrong Co.*, 486 F.Supp. 769 (E.D.Ky. 1980); *Jackson v. Metropolitan Life Ins. Co.*, 433 F.Supp. 707 (E.D.Ky.1977). In *Gafford*, the plaintiff argued that the removal petition was defective because it failed to allege the defendant's principal place of business. The defendant subsequently offered evidence of its principal place of business, which did not destroy diversity. The Court quoted approvingly the following language explaining why amendments should be permitted under these circumstances:

> Better if the jurisdiction in fact exists, to permit the petition for removal to be amended to reflect it. It appears that the time has come to reexamine this entire matter and expressly adopt the approach ... that amendments to the jurisdictional allegations of removal petitions should be permitted in the same manner as amendments to any other pleading.
>
> . . . .
>
> It must be made clear that this opinion is not to be construed as departing in any way from the precept that the facts giving rise to federal jurisdiction must be strictly construed and alleged with particularity.

The decision holds only that the time has come to apply the principles of modern pleading relating to amendments to removal petitions, and that amendments should be permitted, to implement the spirit of the statute and rules cited herein, where the jurisdictional facts do indeed exist, and the parties are in law entitled to invoke the jurisdiction of the federal court.

. . . .

Virtually all of the commentators and the great weight of judicial authority favor the rule adopted by this decision. Indeed, the strict view reflected by the earlier cases hereinabove cited has been expressly criticized.

For the above reasons, the court holds that a petition for removal may be amended under the same considerations governing the amendment of any other pleading containing jurisdictional allegations.

*Gafford,* 997 F.2d at 164 (quoting *Stanley Electric,* 486 F.Supp. at 772–73.)

In both *Gafford* and the present case, diversity jurisdiction was alleged in the original petition, diversity in fact existed at the time of the original petition and the defendant provided additional allegations regarding the diversity of the parties after the removal period had expired. Under *Gafford,* the District Court correctly granted Phoenix leave to amend its petition.

### IV. Motion to Dismiss Tech Hill's Notice Of Appeal

■ It is undisputed that Tech Hills accepted payment of $313,646.89 and executed an unconditional satisfaction of the judgment entered by the District Court. Phoenix argues that pursuant to the acceptance of the benefits doctrine, Tech Hills has waived its right to appeal. The acceptance of benefits doctrine provides that a party who accepts the benefits of a judgment is precluded from appealing that judgment. *See Embry v. Palmer,* 107 U.S. 3 (17 Otto 3) 2 S.Ct. 25, 27 L.Ed. 346 (1883); *Wynfield Inns v. Edward LeRoux Group, Inc.,* 896 F.2d 483 (11th Cir.

---

3. The defendant did not file, and the Court did not require it to file, a formal motion to amend their petition. The petition for removal, to the extent it was deficient, was cured by subsequent affidavits the defendant supplied to the District Court at a jurisdiction hearing. This information was treated as the equivalent of an amendment to the petition.

1990). This Circuit has neither accepted nor rejected this doctrine.

In *Wynfield Inns,* the plaintiff was awarded damages under a theory of quantum meruit, but lost on its claims for breach of contract and fraud. The plaintiff appealed the contract claims and then accepted payment of damages on the quantum meruit judgment. The defendant argued that the plaintiff should be precluded from pursuing its appeal under the election of remedies doctrine. The court agreed. The court held that because the plaintiff's acceptance of the quantum meruit remedy was inconsistent with the pursuit of its contract claims, the plaintiff was estopped from pursuing its contract remedies on appeal.

The court further held that the plaintiff's appeal was also barred under the acceptance of benefits doctrine. The court noted that the action was unlike situations where a party whose entitlement to a particular amount of recovery is uncontested seeks additional recovery under a single legal theory. *See United States v. Hougham,* 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

*Wynfield Inns* is on all fours with the present case. The judgment returning the loan commitment fee to Tech Hills is based on the finding that no contract was ever formed between the parties. In its opinion of November 28, 1990, the court stated that:

> [P]laintiff is entitled to a return of the $252,000 commitment fee because this Court believes the evidence supports a conclusion that the commitment fee was to be returned to plaintiff if an agreement was never reached between the parties. Plaintiff specifically sought, as part of its damages for breach of contract, the $252,000 it paid as a commitment fee. The Court cannot award such sum as damages for breach of contract since this Court believes no contract ever existed. The Court, however, will allow plaintiff to amend its complaint, to conform to the proofs, to seek a return of the $252,000 on an appropriate theory other than breach of contract.

Thus, the court could not return the fee under contract-based theories. Tech Hills then amended its complaint to add theories of unjust enrichment and failure of consider-

ation. In the court's opinion of September 23, 1991, it held that Phoenix was unjustly enriched because the fee was payment for Phoenix obligating itself to make the loan. The court again stated that it found that the "evidence introduced at trial supports a conclusion that if the parties never reached a legally enforceable agreement as to the 'commitment' then the fee paid by the plaintiff to defendant would be refunded." Because there was no meeting of the minds, Phoenix never became obligated to make the loan and was, therefore, unjustly enriched because it retained the fee it should have returned. On a similar basis, the court held that there was a lack of consideration. A judgment on either of these bases is totally inconsistent with any breach of contract claims. Tech Hills' appeal on its breach of contract claims is inconsistent with its acceptance of the judgment. The acceptance of benefits doctrine bars Tech Hills from pursuing its appeal of the judgment under a theory inconsistent with the judgment. Further, under the election of remedies doctrine, Tech Hills is estopped from pursuing its contract remedies.

### V.

Tech Hills' motion for summary reversal is **DENIED.** Phoenix's motion to dismiss Tech Hills' appeal is **GRANTED** and the judgment of the District Court is **AFFIRMED.**