**PILOT TRADING COMPANY, a Nevada Corporation, Plaintiff,**

v.

**HARTFORD INSURANCE GROUP; Hartford Fire Insurance Company; and Does I–V, inclusive, Defendants.**

**No. CV–N–96–324–ECR(PHA).**

United States District Court, D. Nevada.

Nov. 22, 1996.

Richard Glasson, Scarpello & Alling, Ltd., Stateline, NV, for Plaintiff.

Joseph J. Van Walraven, Reno, NV, for Defendants.

## *ORDER*

EDWARD C. REED, Jr., District Judge.

Defendants ITT Hartford Group and Hartford Fire Insurance Company ("Defendants") removed this case from Nevada's Ninth Judicial District by Notices of Removal (Docs. #1 & 2) filed May 16, 1996. Plaintiff Pilot Trading Company ("Plaintiff") has moved to remand. Doc. #9. For the reasons outlined below, this motion is DENIED.

## BACKGROUND

Plaintiff originally filed this breach of contract action in Nevada state court on March 15, 1996. Complaint (Doc. #1, Ex. 1). Defendants removed the case to this Court on May 16, 1996, claiming diversity jurisdiction under 28 U.S.C. § 1332. Notices of Removal (Docs. #1 & 2). The undisputed facts are that 1) Plaintiff filed its Summons and Complaint with the Nevada Insurance Commission on April 8, 1996, in accordance with Nev.Rev.Stat. Ann. § 680A.250–260 (Michie 1995), which allows service of process on out of state insurers via the Insurance Commissioner (Def.'s Opp'n at 3 (Doc. #15)), 2) the Insurance Commissioner sent out the Summons and Complaint via certified mail on April 11, 1996 (Def.'s Opp'n at 5 (Doc. #15)), and 3) Defendant Hartford Fire Insurance Company received the Summons and Complaint on April 17, 1996 (Def.'s Opp'n at 5 (Doc. #15)). Defendants thus filed their Notices of Removal 29 days after actual receipt of the Summons and Complaint, 35 days after mailing by the Nevada Insurance Commissioner, and 38 days after actual receipt by the Nevada Insurance Commissioner.

## DISCUSSION

Although the statutory time limit for removal petitions is merely formal and may be waived by the plaintiff, the time limit is mandatory and a timely objection to a late removal petition will defeat removal. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980). The notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b). The broad question presented by Plaintiff's motion is, at which point does the thirty days begin to run?

As the parties' lengthy and carefully reasoned moving papers suggest, the answer is not at all obvious. In particular, the Ninth Circuit has never ruled on this question. *See generally Spielman v. Standard Insurance Company*, 932 F.Supp. 246, 247–49 (N.D.Cal. 1996) (discussing the state of the law in various jurisdictions). Other Circuits have ruled on related questions. *E.g., Roe v. O'Donohue*, 38 F.3d 298, 304 (7th Cir.1994) (actual notice starts the clock, even when service is improper); *Tech Hills II v. Phoenix Home Life Mutual Insurance Co.*, 5 F.3d 963, 968 (6th Cir.1993) (actual notice by an agent authorized to accept service starts the clock); *Ardison v. Villa*, 248 F.2d 226, 227 (10th Cir.1957) (receipt of complaint, not merely summons, starts the clock). Although these cases suggest that the date of actual notice is the start date for the running of the removal period, none of these cases grapple with the special circumstance we face here: service through a statutory agent.

## I. Nevada Statutory Service

Under Nev.Rev.Stat. Ann. §§ 680A.250–260, all firms authorized to transact insurance in Nevada must appoint the state Insurance Commissioner as their "attorney to receive service of legal process" in Nevada. Service of process against a domestic insurer is proper in accordance either with the Nevada Rules of Civil Procedure or with §§ 680A.250–260. *Id.* Service of process is complete, under § 680A.260(2), when the Commissioner mails to the defendant, by certified mail, a copy of the process.

*Transamerica Insurance Co. v. C.B. Concrete Co.*, 99 Nev. 677, 669 P.2d 246, 247 (1983).

In this case, proper service of process occurred pursuant to §§ 680A.250–260. Defs.' Joint Statement Concerning Removal at ¶ 2 (Doc. # 5).[1] There is therefore no evidence that any of the difficulties addressed in the appellate cases above are present here. That is, service was proper (*O'Donohue*, 38 F.3d at 304), the Nevada Insurance Commissioner was statutorily authorized to accept service on behalf of Defendants (*Tech Hills II*, 5 F.3d at 968), and the served process included an "initial pleading"—the Complaint (*Ardison*, 248 F.2d at 227). Defs.' Opp'n at 3 (Doc. # 15). The narrow question in the instant case is thus slightly different from that addressed by the Sixth, Seventh, and Tenth Circuits: given that service is complete (under state law) on an out of state defendant when a statutory agent deposits the process in certified mail, does the removal period start to run 1) when the statutory agent receives the process, 2) when the statutory agent deposits the process in the mail, or 3) when the defendant actually receives the process?

## II. Statutory Construction

■ "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." *United States v. Lewis*, 67 F.3d 225, 228 (9th Cir. 1995) (citing *Sullivan v. Stroop*, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502–03, 110 L.Ed.2d 438 (1990)). 28 U.S.C. § 1446(b) states in pertinent part: "The notice of removal . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading. . . ." The phrase "within thirty days after the receipt by the defendant," read by itself, seems clear; it almost certainly means "within thirty days after the *actual* receipt by the defendant." This reading is mandated by the phrase "by the defendant," since receipt by any other party would normally constitute

constructive receipt. That is, the wording "by the defendant" implies that the receipt must be, quite simply, by the defendant (or, in the case of a corporation, by an employee of the defendant authorized to accept service of process), rather than by, say, a statutory agent.

This interpretation resolves the conundrum—the removal clock starts when the defendant actually receives the process. But this interpretation also ignores the other pertinent phrase in the statute: "through service or otherwise." This phrase implies that there are multiple acceptable methods of receipt of process. Plainly, one method is "through service," which normally takes the form of personal service on the defendant; i.e., actual and constructive receipt of process occur simultaneously. *E.g.*, Fed.R.Civ.P. 4; Nev.R.Civ.P. 4. Just as plainly, another acceptable method is "otherwise," which we take to mean, for example, receipt of a courtesy copy of the complaint before completion of service; i.e., actual receipt occurs before constructive receipt. *See* Robert P. Faulkner, *The Courtesy Copy Trap: Untimely Removal from State to Federal Court*, 52 Md. L.Rev. 374 (1993).

In other words, "through service or otherwise" implies that whichever event occurs first, "service" or "otherwise," that first event starts the removal period. "Receipt by the defendant," on the other hand, implies that actual receipt starts the removal period. Either way, in situations where actual receipt occurs before, or simultaneously with, constructive receipt, the clock starts running with the first event—actual receipt. But what if actual receipt does not happen first?

This is the question in the instant case. Under Nev.Rev.Stat.Ann. § 680A.260, constructive "receipt by the defendant, through service" takes place when the Insurance Commissioner deposits the process in the mail, but actual "receipt by the defendant, through service" takes place when the Post Office delivers it. One reading of 28 U.S.C. § 1446(b)—"receipt by the defendant"—renders Defendants' removal timely, because

---

**1.** *But see* Defs.' Opp'n at 3–4 (Doc. #15). Defendants apparently withdrew their concession that service was proper when timeliness of removal

became an issue. Nonetheless, we can find no evidence that service of process was in any way insufficient.

timeliness is measured from actual receipt. The other reading—"through service or otherwise"—renders it untimely, because timeliness is measured from whichever receipt happens first. That is, if we take "receipt" to mean "actual receipt," then the clock starts with actual receipt; if we take "through service or otherwise" to mean "through service or otherwise, whichever occurs first," then the clock starts, in this case, with completion of service. ·

The plain language of the statute consequently generates two reasonable interpretations of 28 U.S.C. § 1446(b): 1) "after the receipt by the defendant, through service or otherwise, *whichever occurs first,*" and 2) "after the *actual* receipt by the defendant, through service or otherwise." Because these two reasonable interpretations yield opposite results in this case, we must look beyond the statutory language.

### III. Case Law

Unfortunately, the federal courts are very nearly silent on this issue. *See generally* 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure 2d § 3732 nn. 9–11 (1986 & 1996 Supp.); 1A James Wm. Moore, Moore's Federal Practice § 0.168[3.–5–4] (2d ed.1996); Jean F. Rydstrom, Annotation, *When Period for Filing Petition for Removal of Civil Action From State Court to Federal District Court Begins to Run Under 28 U.S.C. § 1446(b),* 16 A.L.R.Fed. 287, 307–09 (1973). These commentators are in agreement that, as between actual receipt by the statutory agent and actual receipt by the defendant, the removal clock begins to run upon actual receipt by the defendant. Federal Practice & Procedure 2d at § 3732 nn. 9–11; Moore's Federal Practice at § 0.168[3.–5–4]; 16 A.L.R.Fed. at 307. But none· consider the implications of the rule that service is com-

plete when the statutory agent deposits the process in the mail.

Although there are at least six other states which have statutory agent/mailbox service laws similar to Nevada's,[2] there appear to be only three reported federal cases which explicitly consider the implications of such laws. In *Masters v. Nationwide Mutual Fire Insurance Co.,* 858 F.Supp. 1184 (M.D.Fla. 1994), the plaintiffs served a summons· and complaint on the Florida Insurance Commissioner on December 17, 1993, who mailed the process on December 28, 1993; later that same day (December 28), the defendant received a copy of the complaint. The court noted that

> it seems illogical that delivery to an agent who derives his authority from a state statute is sufficient service when the same state statute provides the additional requirement that the summons and complaint be mailed by the agent to the person being served to start the time for pleading running.

*Id.* at 1186. The Notice of Removal was therefore timely filed because the period "within which a Notice of Removal must be filed does not begin to run until after receipt by the Defendant through service and that would be when the summons and complaint was mailed by the Insurance Commissioner and Treasurer to the person being served." *Id.*

· Along similar lines, the court in *Helgeson v. Barz,* 89 F.Supp. 429, 432 (D.Minn.1950), ruled that when "the Commissioner of Highways was served herein he was acting as the designated agent of defendants for [that] express purpose, and when he was served and ·the affidavit of service forwarded by plaintiffs as required by the statute, the twenty-day period began to run."[3] The court reasoned that the legislative history of the removal statute and its amendments evinced an intent by "Congress to carry out the ex-

---

**2.** Florida (Fla.Stat.Ann. § 48.151(1) (West 1996); Georgia (Ga.Code Ann. § 33–4–4(b) (Michie 1996)); Kentucky (Ky.Rev.Stat.Ann. § 304.3-230(5) (Baldwin 1995)); Minnesota (Minn.Stat. Ann. §§ 45.028 & 64B.35 (West 1996); Mississippi (Miss.Code Ann. § 83–29–31 (1995); Oklahoma (Okla. Stat.Ann. tit. 36, § 622(B) (West 1996).

**3.** Prior to 1965, the removal period specified in 28 U.S.C. § 1446(b) was twenty days; it is currently thirty days. S.Rep. No. 712, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 3245.

pressed desire to make 'uniform the time for filing petitions to remove all civil actions.'" *Id.* at 431 (quoting Revision Notes to 1948 Acts, Federal Civil Judicial Procedure and Rules, 28 U.S.C. § 1446 at 858 (West 1996)). As a result, if the removal clock started on the date of actual receipt by the defendants, "substituted" service on a statutory agent "would be effective on different dates, depending on the relative nearness or remoteness of the states wherein the different defendants may reside," resulting in "much confusion." *Id.* Consequently, the removal period started on January 2, 1950 (when the statutory agent mailed the process), not January 5, 1950 (when the defendants actually received the process), and the defendants' removal notice, filed January 23, 1950, was one day late. *Id.* at 432.

Thirteen years later, the District of Minnesota expressly disapproved this result. In *Benson v. Bradley*, 223 F.Supp. 669, 673 (D.Minn.1963), where the statutory agent received the process September 25, 1963, the process was placed in the mail October 2, 1963, and the Notice of Removal was filed October 18, 1963, the court stated that "*Helgeson* is an incorrect interpretation of § 1446(b)" because it "[did] not square with the wording of § 1446(b)." Specifically, the court argued that a statutory agent is neither the defendant nor the defendant's representative, for purposes of receipt of service, within the meaning of § 1446(b): "It is the defendant who must make the decision to remove, not the Commissioner of Highways; ... [i]f the twenty days began running when the Commissioner was served, the privilege of a defendant to remove could be easily curtailed or abrogated completely." *Id.* at 672. The court also opined that, for purposes of removal, a rule fixing the start date at the date of actual receipt by the defendant "furthers the uniformity which the *Helgeson* Court thought basic to the statute to the same degree as the *Helgeson* approach"; namely, by rendering the sufficiency and details of state service "irrelevant." *Id.* at 672–73. Accordingly, the removal clock started running from the date of actual receipt by the defendant, making Bradley's removal notice timely. *Id.* at 672.

Plainly, the federal decisions on this issue are inconclusive. As a result, we look to other factors and find that the *Benson v. Bradley* approach is the better reasoned of the two basic positions.

## IV. Policy

We arrive at this conclusion for several reasons. First and foremost, "the core function of service is to supply *notice* ... that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States,* — U.S. —, —, 116 S.Ct. 1638, 1648, 134 L.Ed.2d 880 (1996) (emphasis added). Removal is one such defense or objection. In this particular case, it is undisputed that Defendants received no such notice until process arrived in the mail at Defendants' headquarters. Although Plaintiff properly followed the Nevada rules of service, and the Insurance Commissioner properly and expeditiously forwarded process to Defendants, it still took six days for that process to get where it was going. Six days is not an unreasonably long time, but it nonetheless effectively reduced to 24 days Defendants' time to respond to a removable complaint.

Second, and more generally, any other rule would create an irrebuttable presumption. Completion of substituted service does not truly provide notice; instead, it merely creates a presumption of notice. Both the Federal and Nevada Rules of Civil Procedure 6(e) make this presumption more realistic by adding three days to any time limit where service is completed by mail, but the presumption still exists. Because remands are unappealable under 28 U.S.C. § 1447(d), we would render this presumption effectively irrebuttable were we to find that the clock starts running when the process is placed in the mail: removing defendants would have no recourse short of a mandamus action to obtain review of a remand order. We see no convincing reason to construe 28 U.S.C. § 1446(b) as carving out an exception to the general rule that irrebuttable presumptions should be avoided. *Vlandis v. Kline*, 412 U.S. 441, 447, 93 S.Ct. 2230, 2233–34, 37 L.Ed.2d 63 (1973). It would be unjust for a

party's right to due process to depend upon the vagaries of postal delivery.

Third, the removal statute's legislative history implies that actual receipt should start the time for service. Examining legislative history is appropriate where, as here, the statute is ambiguous. *Lewis,* 67 F.3d at 229. Congress amended the removal statute in 1949 to take into account the various state service statutes, some of which do not require service of the complaint at the same time as the summons. H.R.Rep. No. 352, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong.Serv. 1254, 1268. The 1949 deliberations "strongly suggest that ... knowledge of the nature of the claims, and not the state's technical rules of service, determines timeliness." *O'Donohue,* 38 F.3d at 303. The purpose of linking actual possession of a copy of the pleadings with timeliness was apparently to avoid burdening defendants with having to guess whether removal is appropriate. *Id.* In other words, legislative history indicates that knowledge of the nature of the claims (via actual receipt) should start the clock, the formalities of Nevada's substituted service statute notwithstanding.

Fourth, Nevada case law, although not controlling, suggests that the time limits associated with substituted service should be limited in scope. The Nevada case most on point is *Transamerica,* 669 P.2d at 246–47. In *Transamerica,* the defendant bonding company discharged its liability under the subject bond to one claimant on May 1, 1981, the same day that another claimant served the Nevada Insurance Commissioner with a summons and complaint. The defendant received the process on May 7, 1981; the record was silent as to when the Insurance Commissioner mailed the complaint to the defendant. *Id.* at 247. Had the bonding company known of the second claimant at the time it paid out on the bond, it would have been required to pay both claimants on a pro-rata basis (rather than paying the entire bond proceeds to the first claimant). *Id.* The Nevada Supreme Court held that the bonding company acted in good faith (i.e., without actual notice of the second claimant) when it paid off the bond, so that even if service of process had been completed before

the payoff, its liability on the bond had been extinguished. *Id.* That is, constructive receipt through completion of service, although "sufficient to initiate legal proceedings against the insurer," is insufficient to call into question the insurer's good faith unless there is also actual receipt. *Id. Transamerica* is more about the interpretation of Nev.Rev. Stat.Ann. § 624.273, the statute governing bonding company liability, than it is about § 680A.260. Nonetheless, the Nevada Supreme Court expressly noted the error in the trial court's finding that substituted service on Transamerica constituted "notice." *Id.* We decline to make the same error.

Finally, we note explicitly what the *O'Donohue* court only hinted at: any other result might overemphasize state procedural law, in violation of *Erie. Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). That is, employing state substantive law promotes federalism and comity, but allowing state procedural law to control federal removal jurisdiction contravenes federal supremacy.

## CONCLUSION

■ Because Defendants filed their Notices of Removal 29 days after actual receipt of process, removal was timely. We are mindful that doubts about the propriety of removal should be resolved against jurisdiction, but we are also mindful that notice is an important element of due process. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Richards v. Jefferson County,* —— U.S. ——, ——, 116 S.Ct. 1761, 1769, 135 L.Ed.2d 76 (1996). Our holding, that the time for removal starts running (under the Nevada statutory agent law) at the time of actual receipt of the complaint, is narrow. It is also close, however, and we believe that justice requires the retention of removal jurisdiction in this case.

*IT IS, THEREFORE, HEREBY ORDERED THAT* Plaintiff's motion to remand (Doc. #9) is *DENIED.*