**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0543n.06**
**Filed: June 23, 2005**

**No. 04-1404**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RANDY D. SCHLIEWE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OFFICER T. TORO, sued in his individual | ) | EASTERN DISTRICT OF MICHIGAN |
| capacity, OFFICER T. KONARSKI, sued in | ) | |
| his individual capacity, CADET GAYNIER, | ) | |
| sued in his individual capacity, and | ) | |
| OFFICER MONETTE, sued in his | ) | |
| individual capacity. | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: Martin and Rogers, Circuit Judges; McKinley, District Judge.**[*]

**Rogers, Circuit Judge.**  Randy Schliewe sued Officers Troy Toro, Thomas Konarski, and

Charles Monette, and Cadet Marc Gaynier (collectively, the officers) after he was arrested and

detained for being a disorderly person.  Mr. Schliewe claims the officers violated his constitutional

rights and are liable under 42 U.S.C. § 1983 for: (1) arresting him without probable cause in

violation of the Fourth Amendment; (2) using excessive force to restrain him at the jail in violation

of the Fourth Amendment; and (3) delaying medical treatment in violation of the Fourteenth

Amendment.  Mr. Schliewe also argues that the officers are liable under state law for the torts of

---

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western
District of Kentucky, sitting by designation.

false arrest, battery and intentional infliction of emotional distress. Mr. Schliewe appeals the district court's decisions to: (1) deny his motion to remand based on the officers' failure to promptly file a copy of the notice of removal with the state court; (2) grant summary judgment in favor of the officers on his constitutional and state law claims; and (3) deny Mr. Schliewe's motion to amend his complaint. We affirm the district court's decisions.

I.

On June 15, 2001, Mr. Schliewe and two of his friends, Sean Elliot and Matt Smith, attended a concert in Detroit. At the concert Mr. Schliewe and Mr. Smith asked a man in the restroom to buy them a beer. Mr. Schliewe apparently had a reaction to something in the beer because his behavior became erratic after drinking it. After the three men left the concert, Mr. Elliot took Mr. Schliewe and Mr. Smith to the home of another friend, Chris Smith. Disoriented, Mr. Schliewe and Matt Smith left Chris Smith's home to wander the neighborhood. Mr. Schliewe went to Julie Tice's home, where, after an argument, he was beaten by two of her friends. Mr. Schliewe, bleeding from several cuts on his face, was picked up by another friend, Doug Brooks, who returned Mr. Schliewe and Matt Smith to Chris Smith's home.

Further agitated and still bleeding after attempting to clean his wounds, Mr. Schliewe left Chris Smith's house on foot to return home, against the advice of his friends, who urged him to seek medical treatment. As Mr. Schliewe was heading for home, his friends followed, urging him to go to a hospital. The group arrived at a gas station in the City of Taylor, Michigan, where one of Mr.

Schliewe's friends bought him a bottle of water. Mr. Schliewe poured the water on himself in an attempt to wash off the blood from the cuts on his face. At this point, Officer Gersky of the City of Taylor police department arrived in response to a call reporting a large group fighting. Officer Gersky was followed by Officers Toro and Konarski in a second car, and Officers Monett and Marimpietri in a third. Mr. Schliewe explained to Officer Toro that he had been assaulted, but did not know where or by whom. Officer Gersky called the paramedics to treat Mr. Schliewe, who was covered in blood.

Officer Toro observed that Mr. Schliewe's head, arms, face and hands were covered in blood, and that Mr. Schliewe had been attempting to wash off the blood with water. At first, Mr. Schliewe asked Officers Toro and Konarski for medical treatment, but later changed his mind and became uncooperative. At some point, the paramedics arrived on the scene. Mr. Schliewe, agitated, began flailing his arms and making exaggerated movements, and, because he was covered in blood, he was unintentionally getting blood on the people around him. Officer Toro asked Mr. Schliewe to stop moving because he was getting blood on Officer Toro. Mr. Schliewe responded, "What are you going to do about it, bitch?," at which point Officer Toro arrested him.

Once Mr. Schliewe was arrested, he was taken to the Taylor police station for booking; the paramedics followed. In a unique turn of events, everything that happened at the Taylor police station was captured on surveillance cameras, obviating the need to rely on the parties' characterization of what transpired. Upon arriving at the station, Mr. Schliewe was treated by the paramedics for a laceration on his nose, but he was not an ideal patient. After the cut on his nose

was dressed by the paramedics, Officer Toro sat Mr. Schliewe on a bench just outside of the booking room, but did not handcuff him. Another officer then attempted to administer a breath test to determine Mr. Schliewe's blood alcohol level.

After the officer administered the breath test to Mr. Schliewe, Officer Konarski walked toward a door leading into the communications room of the police station. Mr. Schliewe watched Officer Konarski open the door and then attempted to escape by running toward the open door. Mr. Schliewe ran into Officer Konarski, and Officers Konarski and Monette and Cadet Gaynier moved to subdue him. Officer Toro, running from the room where Mr. Schliewe had been treated, cocked back his fist and punched Mr. Schliewe in the face. It was later discovered that Mr. Schliewe's jaw was broken. One of the officers kicked Mr. Schliewe twice in the back as the officers wrestled him to the ground. Officer Toro can be observed on the videotape yelling at either Mr. Schliewe or the officers, who then dragged Mr. Schliewe by his feet to a holding cell. According to the officers, the situation was unusual and the tape reveals that the officers' reaction to Mr. Schliewe's move to escape was instinctive.

The tape reveals that after being searched in the holding cell, Mr. Schliewe continued to try to stand up, with an officer pushing him back onto a bench in the holding cell. The officers left Mr. Schliewe in the holding cell, and he remained there for an hour and fifty minutes. One of the officers can be seen mopping the floor to clean up some blood from Mr. Schliewe's altercation with the officers as Mr. Schliewe sat in the holding cell with his head in his hands. Eventually, he lay down on a bench in the holding cell. The officers checked in on Mr. Schliewe periodically, speaking

with him at times, and Mr. Schliewe appeared responsive. Officers Toro and Konarski then took Mr. Schliewe to the hospital.

On October 1, 2002, Mr. Schliewe filed suit in Michigan state court, alleging constitutional violations under § 1983 and pendent state law tort claims stemming from his arrest and detention. The suit named the four City of Taylor police officers who restrained him at the station when he attempted to enter the communications room. The officers removed the case to federal court, filing their notice of removal 27 days after being served with the complaint, on October 31, 2002. When the officers filed their notice of removal, a copy was sent to the clerk of the court for Wayne County, where the state court case was filed. On November 7, 2002, the Wayne County court clerk returned the notice to the defendants, requesting that the name of the judge and the case number be included in the notice of removal. On November 19th, the Wayne County court clerk noted in the state court docket that the removal of the case was pending.

Mr. Schliewe filed a motion to remand the case to state court based on the officers' failure to file the notice of removal in state court, at which point the officers provided the Wayne County court clerk with the requested information. The state court clerk docketed the notice of removal on December 12, 2002. Mr. Schliewe argued for remand on the ground that the officers failed to file the notice of removal promptly with the state court, as required by 28 U.S.C. § 1446(d). The district court, observing that it took every opportunity to reduce its docket, denied the motion because the officers had given the state court prompt notice of the pending removal, even if the notice of removal was not docketed by the Michigan court until December.

Discovery proceeded in the case, leading up to the filing of a summary judgment motion by the officers. The district court granted the officers' motion for summary judgment in an oral ruling. The district court determined that there was probable cause to arrest Mr. Schliewe for being a disorderly person under Michigan law, and that this fact precluded both a § 1983 claim for violating the Fourth Amendment and a claim of false arrest under Michigan law. Turning to whether the officers used excessive force in restraining Mr. Schliewe, the district court found that the officers were entitled to qualified immunity on the § 1983 claim because the amount of force used was reasonable; as a result, the state law battery claim also failed. Finally, with regard to the denial of medical care, the district court found that Mr. Schliewe showed no signs that he needed medical care and did not indicate that he was in physical distress. Thus, there was no deliberate indifference to his medical needs, no unreasonable delay in seeking medical care, and no intentional infliction of emotional distress.

At the oral argument on the officers' summary judgment motion, Mr. Schliewe raised his motion to amend the complaint. Mr. Schliewe sought to amend his complaint: (1) to assert a First Amendment claim based on the allegation that Officer Toro arrested Mr. Schliewe for calling him a bitch; (2) to assert the Fourth Amendment as the basis for the claim the officers were indifferent to Mr. Schliewe's medical needs; and (3) to assert a claim that the officers had a duty to intervene and provide medical care beyond alerting their supervisor. In a short, written order the district court denied the motion to amend and granted the officers' motion for summary judgment because amending the complaint would be futile. Specifically, the district court found that there was no First

Amendment issue presented on the facts of the case, and that the other two amendments added nothing beyond the earlier claim of deliberate indifference to Mr. Schliewe's medical needs. This appeal followed.

II.

The district court did not err in denying Mr. Schliewe's motion to remand because the officers promptly filed a notice of removal with the Michigan court as required by 28 U.S.C. § 1446(d). The district court's decision to deny a motion to remand is reviewed de novo. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 200 (6th Cir. 2004). 28 U.S.C. § 1446 requires that a civil defendant file a notice of removal with the United States district court for the district and division in which the state court action was pending within thirty days of receiving the complaint or other pleading which makes the case removable. 28 U.S.C. § 1446(a) & (b) (2000). The defendants then must file the notice of removal with the state court where the action originated "promptly" to effect the removal. 28 U.S.C. § 1446(d) (2000). It is the notice to the district court that an action has been removed which terminates the state court's jurisdiction over the case, so when a defendant fails to notify the state court promptly of the removal he creates concurrent jurisdiction over the case in both the state and federal court. *See* 28 U.S.C. § 1446(d); *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62, 69 (3d Cir. 1993); *Berberian v. Gibney*, 514 F.2d 790, 791 (1st Cir. 1975). Thus, the requirement that a defendant file the notice of removal with the state court is more than a mere courtesy.

Mr. Schliewe argues for remand based on the fact that the state court did not docket the

officers' notice of removal until December 12, 2002. The officers' failure to include the name of the judge and the docket number of the federal case, according to Mr. Schliewe, resulted in the notice of removal not being filed with the state court promptly. However, it is clear that in early November the state court was promptly given actual notice of the officers' removal of the case. The officers committed a technical error in the notice of removal filed with the state court that could be easily cured, and it is "[b]etter[,] if the jurisdiction in fact exists, to permit the petition for removal to be amended to reflect it" than to remand the case to the state court. *Gafford v. Gen. Electric Co.*, 997 F.2d 150, 164 (6th Cir. 1993); *see Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 969 (6th Cir. 1993) (holding that remand is not required where there are technical defects in the notice of removal that a defendant can cure, even if the defect is cured outside of the thirty day period in which notice of removal must be filed); *Klein v. Manor Healthcare Corp.*, Nos. 92-4328 & 92-4347, 1994 WL 91786 (6th Cir. Mar. 22, 1994) (stating that this circuit "has expressed a reluctance to interpret statutory removal provisions in a grudging and rigid manner"). Therefore, Mr. Schliewe's motion for remand was properly denied.

III.

Summary judgment in favor of the officers on Mr. Schliewe's § 1983 claims was proper because the officers did not commit a constitutional violation. Nor did the district court err in determining that because Mr. Schliewe's constitutional rights were not violated, his state law tort claims also failed. The district court's decision to grant summary judgment in favor of the officers is reviewed de novo, and summary judgment is properly granted where there is no genuine issue of

material fact. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 301 (6th Cir. 2005). The question of whether the district court properly determined that the officers were entitled to qualified immunity on Mr. Schliewe's § 1983 claims is a question of law which is also reviewed de novo. *Id.* In this case, much of the factual basis of the dispute was captured on videotape. Mr. Schliewe admitted the tape speaks for itself, and the parties generally do not dispute the facts of the case.

To prevail on his § 1983 claims, Mr. Schliewe was required to "establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir.2001)). In § 1983 actions, however, police officers are shielded from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The first step of the qualified immunity analysis is to determine whether the officers violated Mr. Schliewe's constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Because Mr. Schliewe's constitutional rights were not violated by his arrest or detention, there is no need to proceed further in the qualified immunity analysis.

A.      Officer Toro had probable cause to arrest Mr. Schliewe

Officer Toro is entitled to summary judgment because he had probable cause to arrest Mr. Schliewe for being a disorderly person under Michigan law, and therefore did not violate Mr. Schliewe's Fourth Amendment rights. Further, because Officer Toro had probable cause to arrest

Mr. Schliewe, his state law claim of false arrest fails because his arrest was legal. Mr. Schliewe claims that, at the time Officer Toro arrested him, Officer Toro lacked sufficient probable cause to believe that Mr. Schliewe was a disorderly person under Michigan law. Being a disorderly person is a misdemeanor under Michigan law, and a person is disorderly if he, "is intoxicated in a public place and [] is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance." MICH. COMP. LAWS §§ 750.167(1)(e), 750.168. "Probable cause exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Skousen v. Brighton High School*, 305 F.3d 520, 528 (6th Cir. 2002) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). The question, therefore, is whether the facts and circumstances known to Officer Toro were sufficient to support his belief that Mr. Schliewe was a disorderly person under Michigan law.

At the time Mr. Schliewe was arrested, there is no dispute that he was agitated, confused, covered in blood, and apparently intoxicated. A bloody individual who is agitated, has refused medical treatment and, by waving his arms, is causing blood to come into contact with those around him represents a direct danger to the safety of others. The danger Mr. Schliewe represented is sufficient to support a finding that Officer Toro had probable cause to arrest Mr. Schliewe for being a disorderly person, regardless of Mr. Schliewe's profane query. Therefore, summary judgment in favor of Officer Toro was properly granted because there was no seizure of Mr. Schliewe in

violation of the Fourth Amendment. *See Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999). Further, because Mr. Schliewe fails to raise a genuine issue of material fact contradicting the conclusion that Officer Toro had probable cause to arrest Mr. Schliewe, his state law claim for false imprisonment must fail as well. *Id.*; *see Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 894 (Mich. 1982) (an arrest by police justified by probable cause is not a false arrest).

> B. The officers did not use excessive force in detaining Mr. Schliewe when he attempted to enter the communications room

The officers are entitled to summary judgment on Mr. Schliewe's excessive force claim because the amount of force used to detain Mr. Schliewe as he attempted to enter the communications room was reasonable, and therefore did not violate the Fourth Amendment. Because the amount of force used was reasonable, Mr. Schliewe's state law battery claim also fails. *Graham v. Connor* set out the framework for analyzing whether the amount of force used to effect a seizure is constitutional. 490 U.S. 386, 396 (1989). The use of force must be objectively reasonable, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Further, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

The amount of force used to subdue Mr. Schliewe was reasonable. While Mr. Schliewe was not charged with a serious crime, it was difficult for the officers to judge his intentions because Mr.

Schliewe had behaved erratically during the evening and was apparently intoxicated. Mr. Schliewe was attempting an escape from the holding area of the police station and resisted the officers' attempts to subdue him, thus justifying the use of at least some force. Mr. Schliewe focuses on the blow struck by Officer Toro as unreasonable. While punching someone may not be the best way to prevent his escape, it cannot be said that the blow was objectively unreasonable. The entire incident was over very quickly and the officers had never been confronted with an individual attempting to enter the communications room from the holding area. Officer Toro reacted instinctively to Mr. Schliewe's attempted escape and from the perspective of a reasonable officer on the scene, the blow was not objectively unreasonable. As to Mr. Schliewe's state law battery claim, because the amount of force used to subdue Mr. Schliewe was reasonable he cannot make out a claim of battery under Michigan law. *See Anderson v. Antal*, No. 98-1657, 1999 WL 717993 at *6 (6th Cir. Sept. 7, 1999); *Hall v. Township of Mount Morris*, 198 F.Supp.2d 906, 920 (E.D. Mich. 2002).

> C.    The officers were not deliberately indifferent to Mr. Schliewe's serious medical needs

The officers are entitled to summary judgment on Mr. Schliewe's deliberate indifference claim because after the altercation, they were not deliberately indifferent to Mr. Schliewe's serious medical needs in violation of the Fourteenth Amendment. Because Mr. Schliewe cannot make out a claim of deliberate indifference, he cannot demonstrate the extreme and outrageous conduct necessary to sustain his state law claim of intentional infliction of emotional distress. The

Fourteenth Amendment gives pre-trial detainees a right to adequate medical treatment that is analogous to that of prisoners under Eighth Amendment. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). In order to sustain a claim of inadequate medical treatment under § 1983, Mr. Schliewe must demonstrate that the officers acted with "deliberate indifference to [his] serious medical needs." *Id.* (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.2001)). Such a claim has an objective and a subjective component, requiring Mr. Schliewe to show that he: (1) had a sufficiently serious medical need; and (2) that the officers knew that the serious medical need posed a substantial risk to the detainee, but proceeded to disregard the risk. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Mr. Schliewe cannot demonstrate that the officers were aware Mr. Schliewe had a medical need which posed a serious risk to Mr. Schliewe. Assuming that Mr. Schliewe's wounds and broken jaw qualify as a serious medical need, from the perspective of the officers, Mr. Schliewe's medical needs did not present a substantial risk of serious harm. *Contrast Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). Mr. Schliewe's face was lacerated and bloody, but the paramedics had assessed his condition upon Mr. Schliewe's arrival at the police station and apparently did not believe Mr. Schliewe's medical needs posed a substantial risk to Mr. Schliewe. After the attempted escape, the officers periodically checked on Mr. Schliewe, who was responsive when spoken to. Mr. Schliewe did not cry out in pain, request treatment, or have any discernable reaction to the blow he received from Officer Toro. Mr. Schliewe was bleeding from the cuts on his face and a quantity of blood can be observed on the bench and floor of the holding cell after Mr.

Schliewe was taken to the hospital. However, while the officers knew that Mr. Schliewe needed some medical treatment, his condition was not an obvious medical emergency and the officers did not fail within a reasonable time frame to address a medical condition that posed a serious risk to Mr. Schliewe.

Given that the officers were not deliberately indifferent to Mr. Schliewe's serious medical needs, his claim of intentional infliction of emotional distress must fail as well. Under Michigan law, Mr. Schliewe must demonstrate that the officers' conduct was extreme and outrageous to sustain his claim of intentional infliction of emotional distress. *See Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908-09 (Mich. 1985); *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004). A plaintiff must meet a very high burden to show extreme or outrageous conduct, and the fact that Mr. Schliewe cannot meet the lower standard of deliberate indifference precludes a finding that he has raised a genuine issue of material fact on whether the officers conduct was "beyond all possible bounds of decency." *See VanVorous*, 687 N.W.2d at 142.

IV.

The district court also properly denied Mr. Schliewe's motion to amend his complaint to add a claim based on the exercise of his First Amendment rights.[1] Amendment of Mr. Schliewe's complaint to add a First Amendment claim would be futile because the claim is without merit. In

---

[1]Mr. Schliewe does not address the other two claims he sought to add by way of his proposed amended complaint, and therefore he has waived any claim that the district court erred in denying Mr. Schliewe leave to amend his complaint to include those claims.

general, leave to amend the plaintiff's complaint "shall be freely given when justice so requires."
FED. R. CIV. P. 15(a). While that is a liberal standard, the district court need not grant the plaintiff leave to amend his complaint if there is evidence of, among other things, the "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When, as in this case, "the district court bases its decision to deny leave to amend on a legal conclusion that amendment would be futile . . . this court reviews the decision *de novo*." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). It is true that a police officer who arrests an individual in retaliation for insulting him or using profanity may violate that individual's First Amendment rights if the officer would not have made the arrest in the absence of a retaliatory motive. *See Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002). However, in this case it is abundantly clear that Mr. Schliewe was arrested for bleeding on those around him and threatening Officer Toro, regardless of the fact that he used profanity.

V.

For the foregoing reasons, we AFFIRM the judgment of the district court.